No. 24-10663

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

RONNIE ALEXANDER,

                Plaintiff–Appellant,

v.

PHILIP R. TAFT PSY D AND ASSOCIATES, P.L.L.C.; HENDERSON COUNTY TEXAS; NATHANIEL PATTERSON; TAYLOR CALDWELL; MORGAN FAIN; NOAH KREIE; WILLIAM TRUSSEL; DORA MARTINEZ; MELISSA HARMON; PHILIP TAFT,

                Defendants–Appellees.

On Appeal from a Final Judgment of the
United States District Court for the Northern District of Texas
Case No. 3:22-cv-395, Hon. Brantley Starr

**BRIEF OF PRISON LAW SCHOLARS AS AMICI CURIAE SUPPORTING APPELLANT AND REHEARING**

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW Front 1
#33821
Washington, DC 20033
(202) 455-4399
sam@rightsbehindbars.org

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

Counsel for *Amici*

August 14, 2025

# CERTIFICATE OF INTERESTED PERSONS

In addition to the persons described in the Parties' certificates of interested persons, the following listed persons have an interest in the outcome of this case within the meaning of Rule 28.2.1:

Bakhshay, Shirin, *Amicus*

Dangaran, D, *Amicus*

Davy, Jim, *Amici*'s counsel

Fenster, Mark, *Amicus*

Godfrey, Nicole, *Amicus*

Godsoe, Cynthia, *Amicus*

Jefferis, Danielle, *Amicus*

Weiss, Samuel, *Amici*'s counsel and *Amicus*.

## TABLE OF CONTENTS

**Page(s)**

Certificate of Interested Persons ................................................................................ ii

Table of Authorities ..................................................................................................... iii

Introduction .................................................................................................................... 1

Argument ........................................................................................................................ 1

I. The panel opinion makes basic errors of prison law. ........................................ 1

    A. The Court misdescribes the Fourteenth Amendment's due process inquiry. ............................................................................................................. 1

    B. The opinion misstates the constitutional inquiry for deliberate indifference to a serious medical need. ........................................................ 4

II. In the context of prison law, the majority's concerns are unfounded, and the opinion will have considerable unintended consequences. .................... 5

    A. The majority addresses hypothetical concerns that simply do not exist. ............................................................................................................... 6

    B. The majority conversely ignores the impossible burdens the opinion imposes on incarcerated litigants. ................................................. 8

Conclusion .................................................................................................................... 10

Appendix of Amici Curiae ........................................................................................... 1a

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bell v. Wolfish,*
  441 U.S. 520 (1979) ............................................................................... 1, 2, 3

*Billman v. Ind. Dep't of Corr.,*
  56 F.3d 785 (7th Cir. 1995) ........................................................................ 9

*Brooks v. Warden,*
  800 F.3d 1295 (11th Cir. 2015) .................................................................. 3

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
  489 U.S. 189 (1989) ................................................................................... 7

*DeSpain v. Uphoff,*
  264 F.3d 965 (10th Cir. 2001) .................................................................... 3

*Easter v. Powell,*
  467 F.3d 459 (5th Cir. 2006) ...................................................................... 4

*Edwards v. Arocho,*
  125 F.4th 336 (2d Cir. 2024) ...................................................................... 2

*Estelle v. Gamble,*
  429 U.S. 97 (1976) .................................................................................. 4, 6

*Farmer v. Brennan,*
  511 U.S. 825 (1994) ............................................................................ 4, 7, 9

*Gates v. Cook,*
  376 F.3d 323 (5th Cir. 2004) ................................................................... 3, 5

*Hare v. City of Corinth, Miss.,*
  74 F.3d 633 (5th Cir. 1996) ........................................................................ 4

*Horvath* v. *City of Leander,*
  946 F.3d 787 (5th Cir. 2020) ...................................................................... 7

*J.H. v. Williamson County,*
  951 F.3d 709 (6th Cir. 2020) ...................................................................... 2

*Johnson v. Johnson,*
  385 F.3d 503 (5th Cir. 2004) ...................................................................... 8

*Jones v. Bock,*
  549 U.S. 199 (2007) ................................................................................... 8

*LaReau v. MacDougall,*
  473 F.2d 974 (2d Cir. 1972) ....................................................................... 3

*Littlefield v. Deland,*
  641 F.2d 729 (10th Cir. 1981) .................................................................... 2

*May v. Sheahan,*
  226 F.3d 876 (7th Cir. 2000) ...................................................................... 2

*McKeithan v. Jones,*
  212 F. App'x 129 (3d Cir. 2007) (per curiam) ........................................... 9

*Morris v. Zefferi,*
  601 F.3d 805 (8th Cir. 2010) ...................................................................... 2

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Naranjo v. Thompson*,
  809 F.3d 793 (5th Cir. 2015) .............................................................................. 9
*Sims v. Griffin*,
  35 F.4th 945 (5th Cir. 2022) ............................................................................. 10
*Stevenson v. Tocé*,
  113 F.4th 494 (5th Cir. 2024) ........................................................................... 10
*Taylor v. Riojas*,
  592 U.S. 7 (2020) ............................................................................................... 4
*Whitley v. Albers*,
  475 U.S. 312 (1986) .......................................................................................... 7
*Williamson v. Stirling*,
  912 F.3d 154 (4th Cir. 2018) ............................................................................. 2
*Young v. Quinlan*,
  960 F.2d 351 (3d Cir. 1992) .............................................................................. 3
*Zadeh* v. *Robinson*,
  928 F.3d 457 (5th Cir. 2019) ............................................................................. 7
*Ziglar* v. *Abassi*,
  137 S.Ct. 1843 (2017) ....................................................................................... 7

**Other Authorities**

Institute for Justice, *Results: Who wins qualified immunity cases, and how often do courts grant or deny qualified immunity?* ............................................................... 8

**Rules**

Fed. R. Civ. P. 26(a)(1)(B)(iv) ................................................................................. 9

## INTERESTS OF THE AMICI CURIAE

*Amici* are professors of law who study, teach, and write about prison and jail litigation. They submit this brief to share their views on the substance of prison law and the practical realities of prisoner litigation. A full list of signatories appears as an appendix.

## INTRODUCTION

*Amici* urge the panel to rehear this opinion, or at minimum reissue it as unpublished. It makes basic errors of prison law—both doctrinal and in assessing the context and incentives of prison civil rights litigation. If applied widely, it would immunize unconstitutional conduct across the Circuit.

## ARGUMENT

**I.  The panel opinion makes basic errors of prison law.**

**A.  The Court misdescribes the Fourteenth Amendment's due process inquiry.**

Pretrial detainees cannot be "punished." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In *Bell*, the Court explained that a pretrial detainee's conditions of confinement can constitute punishment either because of a jail's "expressed intent to punish" or an inferred one. 441 U.S. at 538–39. The latter inquiry examines (1) "whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and [(2)] whether it appears excessive in relation to the alternative purpose assigned to it." *Id.* at 538 (cleaned up). In short, conditions must advance a legitimate goal and cannot be excessively harsh in doing so. *Id.* at 548.

1

In *Bell*, the Court described the importance of step two of this test by giving an outlandish example: "loading a detainee with chains and shackles and throwing him in a dungeon." *Id.* Doing so "may ensure his presence at trial and preserve the security of the institution" but would nonetheless "support a conclusion that the purpose for which they were imposed was to punish." *Id.* The Court thus warned that absent a proportionality requirement, jails would have undue leeway to impose harsh conditions of confinement for purposes of punishment but escape liability because the conditions had some connection to a legitimate goal of pretrial detention. *Id.*

Circuit courts regularly apply *Bell*'s proportionality test to infer a purpose to punish in violation of the Fourteenth Amendment. *Morris v. Zefferi*, 601 F.3d 805, 811 (8th Cir. 2010) (holding that transporting a pretrial detainee "in a small, unsanitary dog cage for the ninety-minute drive … with no compelling urgency and other options available, was excessive in relation to the goal of preventing escape, and thus, an inference may reasonably be made" that the conditions constituted punishment); *see also Williamson v. Stirling*, 912 F.3d 154, 179 (4th Cir. 2018); *Edwards v. Arocho*, 125 F.4th 336, 352–53 (2d Cir. 2024); *J.H. v. Williamson County*, 951 F.3d 709, 718 (6th Cir. 2020); *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000); *Littlefield v. Deland*, 641 F.2d 729, 731 (10th Cir. 1981). In a case like *Morris*, the jail had a legitimate objective in maintaining security during transportation, and placing the detainee in a urine-soaked dog cage advanced that objective—only *Bell*'s proportionality test supports the obvious conclusion that doing so nonetheless constituted punishment.

Here, the panel majority initially described *Bell*'s test correctly but then simply omitted the proportionality requirement in its analysis. Slip Op. at 6, 7-8. The majority explained that Alexander must demonstrate the jail's restrictions were "not reasonably related to a legitimate governmental objective," and then provided examples of legitimate objectives related to preventing self-harm. *Id.* at 8, 11-12. This analysis, however, only addressed the first prong of *Bell*. 441 U.S. at 538. The Court failed to address whether these restrictions were excessive in relation to that purpose. Slip Op. at 6; *see* 441 U.S. at 538.

In abandoning *Bell*'s proportionality analysis, the majority failed to engage with the specific harsh conditions that form the basis for a Fourteenth Amendment claim under *Bell*. Slip Op. at 6; *see* 441 U.S. at 538. A great weight of caselaw holds that it is excessive in relation to any penological purpose to expose prisoners to feces. *See, e.g., Gates v. Cook*, 376 F.3d 323, 334 (5th Cir. 2004); *Brooks v. Warden*, 800 F.3d 1295, 1303–04 (11th Cir. 2015); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001); *Young v. Quinlan*, 960 F.2d 351, 365 (3d Cir. 1992); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972). Here, Alexander not only lived in his waste for five days, but developed infections in his feet from exposure to urine and fecal matter—allegations that the Court not only failed to apply in step two of the *Bell* analysis but ignored entirely. Slip Op. at 6; ROA.114 ¶40.

Similarly, while the majority insisted that Alexander's case was "a far cry from the horrifying facts" of *Taylor v. Riojas*, in which the U.S. Supreme Court summarily reversed this Court for failing to find a clearly established Eighth Amendment violation, much of the case is strikingly similar. Slip Op. at 12 n.8. Both cases involve

3

a man who was thrown naked into a filthy cell by taunting guards for five or six days because of a purported suicide threat. *Id.* at 1; *see Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020). Some of the facts from *Taylor* may indeed have been more "horrifying" than here, Slip Op. at 12 n.8, but whatever factual distinctions exist only even matter in step two of the *Bell* inquiry the majority skipped, because defendants in both cases had identical rationales for their similar behavior.

### B. The opinion misstates the constitutional inquiry for deliberate indifference to a serious medical need.

Pretrial detainees are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 642 (5th Cir. 1996). A jail official violates this constitutional protection when deliberately indifferent to a pretrial detainee's serious medical needs. *Id.* The test applies equally to mental health issues as to physical ones. *Hare*, 74 F.3d at 642. Deliberate indifference requires that a jail official subjectively "knows of and disregards an excessive risk" to health or safety. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994); *see e.g.*, *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006) (holding that there was an Eighth Amendment liability where the prison nurse offered non treatment options to a patient with a history of cardiac problems who was experiencing chest pains). A jail official's knowledge of a substantial risk of harm can be inferred if the health risk is obvious. *Farmer*, 511 U.S. at 842 n.8.

The panel majority failed to state or apply this black letter standard to the County. Instead, the majority simply held that the County provided mental health assistance through "protection from violence or suicide" without considering whether Alexander

4

had a serious medical need or whether the County was deliberately indifferent to it by failing to have any qualified mental health staff present. Slip Op. at 15. The majority held that Alexander failed to demonstrate that the County's "mental health treatment plan" was constitutionally inadequate, but Alexander plausibly alleged a "total, intentional deprivation of qualified mental health care." Slip Op. at 19, 15. An entirely unqualified person conducting a fleeting interview with Alexander more than two days after Alexander was placed in isolation cannot constitute a treatment plan. ROA.114 ¶¶ 4, 99, 104, 107, 122–23; *see Gates*, 376 F.3d at 336. The Court erred too in applying this standard to Phlips herself when it considered only on what she did not do—move Alexander out of the suicide cell—rather than on what she did do: nothing. Slip Op. at 15; *see Gates*, 376 F.3d at 336.

## II. In the context of prison law, the majority's concerns are unfounded, and the opinion will have considerable unintended consequences.

The panel majority expresses concern that allowing Mr. Alexander's claim to proceed would create a "minefield" for correctional defendants. Slip Op. at 11. That concern is misplaced. The structures of prison law and the PLRA, including high substantive standards that *pro se* incarcerated litigants cannot marshal evidence to meet and the judge-made doctrine of qualified immunity, already prevent prisoners from redressing many constitutional violations. Additionally, those difficult substantive standards incorporating the subjective state-of-mind of correctional defendants means that prisoners rely even more than other litigants on inferences from allegations and record evidence. Officers rarely state their sadistic or malicious intent explicitly—courts must infer it from context. The majority's misplaced concern

about prison defendants' hypothetical liability overrides incarcerated peoples' entitlement to reasonable inferences, and unfairly bars them from proving already-difficult claims.

### A.   The majority addresses hypothetical concerns that simply do not exist.

The majority fears reading too much into "vulgar comments," Slip Op. at 9, "inappropriate" statements, Slip Op. at 10, or even "threats directed at Alexander," *id.* It worries that inferring malicious intent on the part of officers who, for example, "threaten[ed] to kill [Alexander] with a barbed wire guillotine" and told him not to expect to "leave this facility alive," *id.* at 10 n.6, would actually "result in the denial of constitutional protections" *to incarcerated people. Id.* at 11. That worry is backwards. Prison civil rights law already provides more-than-sufficient protection to officers, obviating any need to undercut Rule 12(b)(6) inferential standards.

First, the substantive standards in prison civil rights cases are already often very high. Substantive claims under the Eighth Amendment include a "subjective" prong that requires plaintiffs to show high *mens rea* on the part of correctional defendants.[1] As noted, claims for inadequate medical care require deliberate indifference, meaning that a defendant knew—not should have known, but actually knew—of a substantial risk of serious harm and intentionally disregarded it. *Farmer*, 511 U.S. at 842-43. Eighth Amendment claims for excessive force similarly require subjective intent to

---

[1] Pretrial detention claims arise under the Fourteenth Amendment but this Court has held that Eighth Amendment standards apply in most contexts. *See Crandel v. Hall,* 75 F.4th 537, 544 (5th Cir. 2023).

6

cause harm on the part of an officer—so even objectively unreasonable and seriously injurious uses of force may not trigger liability without "wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Because of the duty that the constitution imposes upon the State to "assume some responsibility for [the] safety and general well-being" of someone in its custody, *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989), corrections officials cannot disregard a risk of substantial harm to an incarcerated person. *Farmer*, 511 U.S. at 842-43. But an incarcerated plaintiff must show not only that the defendant had knowledge "of the facts from which the inference could be drawn that a substantial risk of harm exists," but that the official did in fact "draw the inference" and consciously disregard the risk. *Id.* at 837, 842. Other common prison civil rights claims, like First Amendment retaliation, look to the state of mind of the defendant also. As claims brought by prisoners require demanding proof of a defendant's state of mind, the standards themselves already shield all but the most malicious defendants.

Second, prison officials benefit from the atextual, judge-made doctrine of qualified immunity. Several judges of this court have explained that, "Nothing in the text of § 1983—either as originally enacted in 1871 or as it is codified today—supports the imposition of the 'clearly established' requirement." *Horvath* v. *City of Leander*, 946 F.3d 787, 801 (5th Cir. 2020) (Ho, J., concurring the judgment and dissenting in part); *Zadeh* v. *Robinson*, 928 F.3d 457, 480 (5th Cir. 2019) (Willet, J., concurring in part and dissenting in part) (discussing growing calls to reform qualified immunity). And the Supreme Court might well reform it. *See Ziglar* v. *Abassi*, 137 S.Ct. 1843, 1872 (2017) (Thomas, J., concurring in part and concurring the judgment) ("In an

appropriate case, we should reconsider our qualified immunity jurisprudence."). Until the Court does, however, qualified immunity protects officers who violate rights every day. *See* Institute for Justice, *Results: Who wins qualified immunity cases, and how often do courts grant or deny qualified immunity?* (listing 5th Circuit as denying qualified immunity in only 16% of appeals). Correctly applying Rule 12 to Alexander's allegations will not put jail officials between a rock and a hard place with liability, as all of prison law is structured to only create liability for significant misconduct.

### B. The majority ignores the impossible burdens the opinion imposes on incarcerated litigants.

Prisoners, more than most litigants, depend on fairly-construed inferences at the motion to dismiss and summary judgment stages because of the difficult substantive standards with subjective elements that they must prove to win their claims. The PLRA, court procedures, and other features of litigation specific to *pro se* incarcerated litigants—including limits on the sorts of discovery that would allow them to obtain state-of-mind information from defendants—pose obstacles independent of and exacerbating the onerous substantive standards. Declining to give incarcerated litigants reasonable inferences risks immunizing entire categories of unconstitutional conduct in prisons and jails across the Circuit.

Aside from the difficult substantive standards, the PLRA prevents many meritorious cases outright. Many never make it to court at all because prisons set their own exhaustion rules, *Jones v. Bock*, 549 U.S. 199, 218 (2007), and often design onerous exhaustion regimes, *see, e.g.*, *Johnson v. Johnson*, 385 F.3d 503, 519 (5th Cir. 2004) (holding that a prisoner could sue about only some sexual assaults among

8

many, based on the grievance time limit). Prisoners cannot easily investigate their claims prior to filing because their facility has a monopoly on information about defendants' identities and most relevant facts. *See, e.g.*, *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995) ("Billman is a prison inmate. His opportunities for conducting a precomplaint inquiry are, we assume, virtually nil."). When prisoners *do* file, they cannot get those facts in discovery, either. They are not entitled to initial disclosures, Fed. R. Civ. P. 26(a)(1)(B)(iv), are often barred from receiving information because of security concerns, *Naranjo v. Thompson*, 809 F.3d 793, 798 (5th Cir. 2015) (explaining that plaintiff "was barred from viewing and responding to discovery that defendants had filed under seal"), and typically do not get to take depositions of correctional defendants without court intervention. *See, e.g.*, *McKeithan v. Jones*, 212 F. App'x 129, 131 (3d Cir. 2007) (per curiam) (rejecting plaintiff's request for an oral deposition, calling it "unorthodox"). And not getting discovery—particularly not getting to question defendants—imposes a unique burden on *pro se* incarcerated litigants who must show defendants' subjective state of mind as part of their claims.

Absent robust discovery, proving correctional defendants' subjective state-of-mind depends on reasonable inferences. The Supreme Court itself has acknowledged this in its seminal cases addressing the difficult substantive standards. *Farmer*, for example, noted that plaintiffs could provide knowledge of a substantial risk of harm through either direct or circumstantial evidence—i.e. evidence from which one can draw inferences about state of mind. *Farmer*, 511 U.S. 837, 842. Most circuits, including this one, draw inferences about subjective knowledge of a substantial risk of harm based upon the obviousness of a serious medical need—because most

9

defendants deny having knowledge. *Sims v. Griffin*, 35 F.4th 945, 949-50 (5th Cir. 2022) (denying summary judgment because of fact dispute over inference about clarity of need for treatment); *see also Stevenson v. Tocé*, 113 F.4th 494 (5th Cir. 2024). The majority's refusal to infer anything about state of mind despite numerous explicit comments, defendants' associated conduct, and context—all at the motion to dismiss stage—if applied widely, would immunize numerous constitutional violations committed by all but the most proudly malicious defendants.

## CONCLUSION

The panel should rehear this case, or, at least, withdraw it and issue it as an unpublished decision.

Respectfully submitted,

|  |  |
|---|---|
| | /s/ Samuel Weiss |
| Jim Davy | Samuel Weiss |
| ALL RISE TRIAL & APPELLATE | RIGHTS BEHIND BARS |
| P.O. Box 15216 | 1800 M Street NW Front 1 |
| Philadelphia, PA 19125 | #33821 |
| (215) 792-3579 | Washington, DC 20033 |
| jimdavy@allriselaw.org | (202) 455-4399 |
| | sam@rightsbehindbars.org |

Counsel for *Amici Curiae*

August 14, 2025

10

**CERTIFICATE OF COMPLIANCE**

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that this brief:

(i) complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains fewer than 2,600 words, including footnotes and excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 16.99, set in Century Schoolbook font in 12-point; and

(iii) that this brief was scanned for viruses prior to submission.

/s/ Samuel Weiss

Samuel Weiss

## CERTIFICATE OF SERVICE

I certify that on August 14, 2025 this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system. I further certify that this brief complies with Fifth Circuit Rule 25.2.13 regarding redactions.

/s/ Samuel Weiss

Sam Weiss

# APPENDIX

# APPENDIX OF AMICI CURIAE

**Name of Amicus Curiae. The below sign in their personal capacities. Their affiliations are listed for purposes of identification only.**

- Bakhshay, Shirin. Assistant Professor of Law, UCLA School of Law.

- Dangaran, D. Assistant Professor of Law at the University of Hawaiʻi at Mānoa William S. Richardson School of Law.

- Fenster, Mark. Marshall M. Criser Eminent Scholar Chair in Electronic Communications and Administrative Law, Levin College of Law, University of Florida.

- Godfrey, Nicole. Assistant Professor of Law, Sturm College of Law, University of Denver.

- Godsoe, Cynthia. Professor of Law and Associate Dean for Research and Scholarship, Brooklyn Law School.

- Jefferis, Danielle. Schmid Professor for Excellence in Research, Assistant Professor of Law, University of Nebraska College of Law.

- Weiss, Samuel. Lecturer on Law at Harvard Law School where he teaches the course "Prison Law."